**WEIGEL v. HOBBS.**

**Patent Appeal No. 3749.**

Court of Customs and Patent Appeals.

Feb. 1, 1937.

GARRETT, Associate Judge, dissenting.

Synnestvedt & Lechner, of Philadelphia, Pa., and Arlon V. Cushman, of Washington, D. C. (Harvey Lechner and Edward H. Davis, both of Philadelphia, Pa., of counsel), for appellant.

Benjamin R. Newcomb, of New York City (Francis B. Leech, of Washington, D. C., and Joseph P. Moran, of New York City, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

This is an appeal in an interference matter. The interference was instituted in the United States Patent Office between the patent of Albert C. Weigel, the appellant, issued February 6, 1934, No. 1,946,-248, and the application of the appellee, James C. Hobbs, filed September 20, 1933, as a continuation of an application filed November 20, 1926. The Weigel patent was issued on an application filed February 6, 1932.

The subject-matter of the interference is stated in the single count of the interference, which is as follows: "In a boiler, the combination with a steam and water drum and boiler tubes delivering thereinto, of a water removing screen device within the drum, said device being so arranged with relation to the tubes that the discharge of the tubes impinges on the screen at an angle substantially less than a right angle."

The date of conception of the invention in issue alleged in the preliminary statement of Weigel, the junior party, being subsequent to the filing date of Hobbs, notice was given to the party Weigel that judgment would be rendered against him unless cause was shown. In answer to this notice, the party Weigel moved to dissolve the interference on the ground that the party Hobbs had no right to make the claims which constituted the then two counts of the interference, both of which counts had been taken from Weigel's said patent.

The Primary Examiner sustained the Weigel motion to dissolve as to count 1 of the interference, but overruled it as to count 2. Priority of invention was then awarded to the party Hobbs on said count 2. On appeal to the Board of Appeals, the decision of the Examiner of Interferences was affirmed. The appellant thereupon appealed to this court.

There is but one question involved in this proceeding, namely, does the single count of the interference read upon the disclosure made in the application of the party Hobbs? Counsel for Weigel, the patentee, insist that it will not so read, and that if there be any uncertainty or ambiguity, the language of the count should be interpreted according to the disclosure in the Weigel patent, from which the count was taken. Counsel for the party Hobbs insist that there is no ambiguity in the count, and hence no recourse to the Weigel disclosure is necessary or proper, and that the count of the interference reads plainly and clearly upon the Hobbs disclosure.

The Weigel device is an apparatus used for the purpose of separating water from wet steam. It consists of a screen apparatus placed within a steam drum and through which steam passing through the drum is obliged to pass. The drum is so constructed that the wet steam enters said drum through pipes in the sides thereof, and is discharged against a screen device consisting of "three spaced wire mesh screens" at an angle of less than 90°. By impinging upon the screen device in this way, and passing through the same, the steam loses a considerable portion of its water, which adheres to the vertically extending wires of the screens in such passage, and by means of which the water is drained and conducted away from the steam. The patent discloses that if the steam be delivered against and upon the screens at right angles thereto, the water which normally collects upon the screens will be blown off and passed forward with the steam, whereas, if the steam is discharged against the screens at an angle less than 90°, the tendency of the water will be to run down the screens and separate from the steam. Wherever the pipes conducting the inflowing steam are inclined to the screens at approximately an angle of 90°, to secure the desired result of an angular discharge of the steam against the screen device, baffles are inserted, against which the steam strikes, and by which it is diverted against and through the screens at an angle of less than 90°.

The Hobbs device seeks to obtain the same result, but the apparatus used is somewhat different. In the Hobbs device, the steam flowing into the drum through steam pipes passes through a so-called screen device and thence out of the drum through a pipe inclined to the inflowing pipes at about an angle of 90°. In so doing, the steam is caused to pass through a device constructed substantially as follows: Angle baffle plates are disposed diagonally between the inflowing steam pipes and

the steam exit pipe. An opening is left between the ends of these baffle plates and a water separating device is built between these ends. This device consists of spaced inclined channels, so constructed that steam can pass through and between them. Attached to these channels are corrugated thin metal strips with the corrugations extending parallel to the flanges. Series of openings are provided along the sides of each corrugation, which consist of downwardly directed V-shaped openings, these openings being of comparatively small area. In some forms of the device, when more than one row of corrugated strips is desired, the strips have wire screens interposed therebetween to prevent the corrugated strips from nesting. Figure 7 shows as many as three of these wire screens interposed in the device.

As illustrated by the drawings of the party Hobbs, after the stream enters the drum it passes through the channels and contacts with the sloping sides of the corrugations in the thin metal plates. The steam thus is divided into small streams which enter the V-shaped openings in the corrugations, are deflected along the sides of the corrugations, pass through the interposed wire screens at what appears to be approximately a right angle, then pass through a similar opening in the corrugated metal on the opposite side of the wire screen, pursue a downward course along the side of the corrugation, and then out through the other side of the screen device. If the device is as shown by Figure 7, that is, consisting of several rows of corrugated metal, the action of the small jets or streams of steam is continuous from one to another set of corrugations until the steam emerges from the opposite side of the screen device.

It is argued by the counsel for appellant that the Hobbs device does not disclose the subject-matter of the count, in this respect, that it does not satisfy the provision "the discharge of the tubes impinges on the screen at an angle substantially less than a right angle." In support of this contention, counsel for appellant insist that the screen intended by the count is a wire mesh screen, as shown by the Weigel patent, and that the party Hobbs does not show any similar device, and that if he does rely upon his wire mesh interposed screens, the incoming steam does not impinge on said screens at an angle substantially less than a right angle.

The Board of Appeals was of the opinion that there seemed to be no reason to limit the term "screen device" to include only a wire screen structure. Even if the counts are to be limited to such wire screens, the board was of opinion that the small jets of steam passing through the V-shaped openings in the corrugated metal would strike the interposed wire screens in the Hobbs device at an angle less than 90°.

We have examined the specification and drawings of the parties with great care, in particular the drawings of Hobbs, which delineate by arrows the course of the steam through his screening device. There is doubt left in the mind by such drawings, as to whether the small jets or streams of steam do strike the interposed wire screens at an angle less than 90°. However, we are of opinion that the Board of Appeals came to the right conclusion when it called attention to the fact that there was nothing in the count of the interference which seems to limit the word "screen" to a wire screen device. The word "screen" is thus defined by the lexicographers:

New English Dictionary (Oxford): "5. An apparatus used in the sifting of grain, coal," etc.

Funk & Wagnalls New Standard Dictionary: "3. A sieve or riddle. (1) A large, coarse sieve, as for sifting sand, gravel, ore, coal, etc. (2) A perforated plate in a stamp-mill or centrifugal roller-mill. (3) One of a series of perforated plates or woven-wire structures for separating different sizes of coal. (4) A framework of crossed wires or slats to prevent fish from passing a certain point in a stream."

Webster's New International Dictionary, 1932: "4. A long, coarse riddle or sieve, a revolving perforated cylinder, or the like, for separating coarser from finer parts, as of coal, sand, or gravel; also, any of various somewhat similar devices intended to allow the passage of smaller portions or objects and prevent that of larger."

It therefore appears that even were there no wire screen interposed between the metal strips in the Hobbs device, the corrugated strips, perforated as they are, would fully come within the common meaning of the word "screen." Furthermore, it will be noted that the count of the interference speaks first of a "water re-

moving screen *device.*" Thereafter, the count refers to said device, "said device being so arranged with relation to the tubes that the discharge of the tubes impinges on the *screen.*" (Italics ours.) It appears that the count, while at one point it speaks of screen device, and another of the screen, evidently had in mind, in both cases, the same element, and it seems reasonable that it should be read in that way.

In the Hobbs device there can be no question but that the stream of incoming steam impinges upon the screen device, that is, the combination of channels, plates, and corrugated strips, at an angle less than 90°, and this, we believe, will satisfy the language and meaning of the count of the interference.

Inasmuch as there does not seem to be any ambiguity in the plain meaning of the count, no recourse to the Weigel patent is necessary for aid in the construction of the count.

We find no error in the decision of the Board of Appeals, and it is affirmed.

Affirmed.

GARRETT, Associate Judge, dissents.